888 F.2d 1212
 LEASEWAY TRANSPORTATION CORPORATION, Plaintiff-Appellee,
v.
Mary BUSHNELL, in her official capacity as Chairman,
Illinois Commerce Commission, et al.,
Defendants-Appellants.
ILLINOIS COMMERCE COMMISSION, Plaintiff-Appellant,
v.
LEASEWAY TRANSPORTATION CORPORATION, Defendant-Appellee.
 No. 89-2597.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 19, 1989.
Decided Nov. 8, 1989.
As Amended Nov. 22, 1989.
 
 Richard C. Gering, Eugene J. Kelley, Jr., Richard L. Rosen, Arnstein & Lehr, Chicago, Ill., Peter A. Greene, R. Hale Foote, Thompson, Hine & Flory, Washington, D.C., for plaintiff-appellee.
 James E. Weging, John P. Kelliher, Edward P. O'Brien, Asst. Attys. Gen., Myra L. Karegianes, Office of the Atty. Gen., Illinois Commerce Com'n, Chicago, Ill., for plaintiff-appellant and defendant-appellant.
 Before CUDAHY, COFFEY and EASTERBROOK, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 In this case Leaseway Transportation Corporation ("Leaseway") seeks a declaratory judgment and a permanent injunction. The Illinois Commerce Commission's original appeal was dismissed for want of jurisdiction because the district court judgment from which the appellants first appealed did not meet the requirements of Federal Rule of Civil Procedure 58, nor did it formally grant (or deny) either form of relief requested by Leaseway. The district court has remedied those problems. Since the Illinois Commerce Commission filed a timely notice of appeal from the district court's amended judgment, we now review the merits of the case.
 
 
 2
 Leaseway had arranged to acquire control of a new subsidiary, Niedert Terminals, Inc. ("Niedert"), through stock purchase. Through this transaction, Leaseway also gained control of Black Horse Carriers, Inc. ("BHC"), Niedert Freight, Inc. ("NFI") and Fleet Carriers, Inc. ("FCI"), which were controlled by Niedert. Because Niedert, along with several other Leaseway subsidiaries, was subject to the jurisdiction of the Interstate Commerce Commission (the "ICC"), Leaseway could not complete its acquisition without prior approval or exemption by the ICC. See 49 U.S.C. Sec. 11343. Leaseway accordingly sought an exemption from the ICC for its acquisition. The ICC allowed the exemption under 49 U.S.C. section 11343(e), which permits it to grant exemptions "from the merger, consolidation, and acquisition of control provisions" laid out in the statute. The statute also provides:
 
 
 3
 The authority of the Interstate Commerce Commission under this subchapter is exclusive. A carrier or corporation participating in or resulting from a transaction approved by or exempted by the Commission under this subchapter may carry out the transaction, own and operate property, and exercise control or franchises acquired through the transaction without the approval of a State authority. A carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction.
 
 
 4
 49 U.S.C. Sec. 11341(a). Leaseway accordingly informed the Illinois Commerce Commission of its status, noting that under section 11341(a) no further approval from the state commission was needed. The Illinois Commerce Commission replied that section 11341(a) was inapplicable to the acquisition in question and threatened Leaseway with civil penalties and revocation of the intrastate operating authorities of Leaseway's carrier subsidiaries unless Leaseway took steps to obtain the appropriate Illinois approval.[1] See Joint App. at 43-44.
 
 
 5
 Leaseway then brought suit asking for a declaratory judgment that the Illinois Commerce Commission "is preempted from exercising any regulatory jurisdiction over any ... acquisition of control" by Leaseway when that acquisition has been approved or exempted by the ICC. Complaint p 19.[2] Leaseway also asked that the court issue a permanent injunction enjoining the Illinois Commerce Commission from taking the actions it threatened against Leaseway. The parties filed cross motions for summary judgment. The district court has now granted Leaseway the relief it seeks, and the Illinois Commerce Commission appeals.
 
 
 6
 The language of section 11341(a) is abundantly clear. It states in unequivocal terms that "[t]he authority of the Interstate Commerce Commission under this subchapter is exclusive" and that carriers exempted by the ICC may carry out the acquisition transaction "without the approval of a State authority."[3] Faced with this very clear statutory mandate, the Illinois Commerce Commission musters two feeble arguments. First, the state agency points to 49 U.S.C. section 10521(b), which provides:
 
 
 7
 (b) This subtitle does not--
 
 
 8
 (1) except as provided in sections 10922(c)(2), and 10935, and 11501(e) of this title, affect the power of a State to regulate intrastate transportation provided by a motor carrier;
 
 
 9
 (2) except as provided in sections 10922(c)(2) and 11501(e), authorize the Commission to prescribe or regulate a rate for intrastate transportation provided by a motor carrier;
 
 
 10
 (3) except as provided in section 10922(c)(2) of this title, allow a motor carrier to provide intrastate transportation on the highways of a State; or
 
 
 11
 (4) except as provided in section 11503a and section 11504(b) of this title, affect the taxation power of a State over a motor carrier.
 
 
 12
 All that is required to dispose of this argument is a careful reading of the language of each sentence. Section 10521(b) governs the operation, not the acquisition, of interstate motor carriers. Illinois remains free to regulate intrastate transportation, prescribe and regulate rates, control access to intrastate transportation on state highways and tax motor carriers. However, none of this undercuts the plain language of section 11341(a), with its grant to the ICC of exclusive control to approve the acquisition of two or more motor carriers. See County of Marin v. United States, 356 U.S. 412, 419, 78 S.Ct. 880, 884, 2 L.Ed.2d 879 (1958); Schwabacher v. United States, 334 U.S. 182, 195, 68 S.Ct. 958, 965, 92 L.Ed. 1305 (1948).[4]
 
 
 13
 Finally, the Illinois Commerce Commission urges that the statutory provisions in question, Ill.Rev.Stat. ch. 95 1/2, para. 18c-4301 et seq., which regulate the transfer of licenses, do not conflict with section 11341(a). The conflict, however, is openly admitted in the letter that the Illinois Commerce Commission sent to Leaseway:
 
 
 14
 You submit that as a result of an Interstate Commerce Commission (ICC) decision in MC-F-17615 that this Commission is preempted from asserting jurisdiction over the above transfers, citing 49 U.S.C. 11341 et seq.
 
 
 15
 Please be advised that this Commission ... has expressly rejected your position. In other words, any transfer of an Illinois authority license, whether accomplished by consolidation, purchase, stock ownership, management or otherwise, is subject to the provisions of Ill.Rev.Stat., Chapter 95 1/2, par. 18c-4301 et seq.
 
 
 16
 Joint App. at 43. The conflict is also apparent in the statutory language, which requires prior approval from the Illinois Commerce Commission before consolidations, mergers and acquisitions may be accomplished. The plain language of section 11341(a) gives the ICC exclusive authority in this domain and specifically permits exemption from any applicable state laws. As several of the panel members remarked at oral argument, the only surprising aspect of the case before us is that it has taken this long for any carrier to challenge the Illinois Commerce Commission's practice (although a certain reluctance to challenge the state commission may be understandable, given the power that agency wields over carriers operating in Illinois).
 
 
 17
 However, although the plain language of the federal statute supports Leaseway's position, it also provides only for exemption "as necessary to let [Leaseway] carry out the transaction, hold, maintain, and operate property, and exercise control or franchises acquired through the transaction." 49 U.S.C. Sec. 11341(a). Thus, the scope of the district court's injunction and declaratory judgment is properly limited; the Illinois Commerce Commission may not act as a "gate-keeper" handing down prior approval of Leaseway's acquisitions, but it may certainly impose filing or notice requirements and taxes (as long as these do not interfere with Leaseway's ability to carry out the acquisition or exercise control as provided in section 11341(a)).
 
 
 18
 Because the district court's orders are appropriately limited in scope, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The Illinois Commerce Commission relied upon Ill.Rev.Stat. ch. 95 1/2, para. 18c-4301, et seq., which reads:
 Power of Commission to Approve Transfers. A license issued under this Sub-chapter may be transferred, with Commission approval, under the conditions specified in this Article and in accordance with such rules and regulations as the Commission may prescribe.
 The following paragraph specifically regulates mergers and acquisitions, demonstrating clearly how the state provisions impinge upon the ICC's exclusive authority:
 Types of Transfers Which May be Approved. It is lawful, with prior authorization from the Commission, for:
 (1) Two or more motor carriers of property to consolidate or merge their properties into one business entity for the ownership, management, or operation of the properties theretofore in separate ownership;
 (2) A motor carrier of property, or two or more such carriers jointly, to purchase, lease or contract to operate the properties of another such carrier;
 (3) A motor carrier of property, or two or more such carriers jointly, to acquire control of another such carrier through ownership of its stock or otherwise....
 Ill.Rev.Stat. ch. 95 1/2, para. 18c-4302 (emphasis added).
 
 
 [2]
 Leaseway brought suit in federal district court; the Illinois Commerce Commission brought suit the following day in state court. Leaseway had the state court suit removed to federal court and consolidated with Leaseway's federal suit
 
 
 [3]
 This explicit grant of exclusivity distinguishes the present case from Louisiana Public Serv. Comm'n v. Federal Communications Comm'n, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), in which the Supreme Court dealt with a statute lacking such explicit language. There, the Court had to discern whether federal preemption could be implied in the absence of explicit statutory language of the sort with which we deal in the case before us--indeed, the statute before the Court explicitly provided that "nothing in this chapter shall be construed to apply or to give the Commission jurisdiction" over the kind of intrastate communication service at issue there. See id. at 373, 106 S.Ct. at 1901. In this case, by contrast, we deal with explicit language that unambiguously grants the federal government a right to preempt
 
 
 [4]
 ICC opinions to date also reach this patently obvious conclusion. See Leaseway Transp. Corp., ICC Dec. No. MC-C-30047, at 126-27 (Sept. 17, 1987); Consolidated Freightways, Inc., and CF Int'l and Air, Inc., ICC Dec. No. MC-F-15841, at 68-70 (Sept. 7, 1984)